## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSS J. SEGREAVES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-4356** |
| | : | |
| **OFFICER MR. HAINES,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**YOUNGE, J.**                                                   **DECEMBER 5, 2024**

Plaintiff Ross J. Segreaves, who is currently incarcerated at SCI Phoenix, initiated this civil action by filing a *pro se* Complaint against four prison employees: Corrections Officers Haines, Tomes, and Laureano, and Unit Manager Fanrall.  (ECF No. 2.)  In a prior Memorandum and Order, the Court granted Segreaves leave to proceed *in forma pauperis*, dismissed his Complaint, and granted him leave to amend.  (*See* ECF Nos. 6, 7.)  Segreaves filed an Amended Complaint, this time naming as Defendants: Haines, Tomes, Laureano, and Security Department Officer Mr. D. Hunter.  (ECF No. 8.)  For the following reasons, the Court will dismiss the Amended Complaint upon screening pursuant to 28 U.S.C. § 1915 and grant Segreaves leave to file a second amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

Segreaves alleges that he was assaulted by other inmates at SCI Phoenix on September 7, 2022, and September 10, 2022.  (Am. Compl. at 5.)  As to the September 7 incident, Segreaves

---

[1]  The facts set forth in this Memorandum are taken from Segreaves's Amended Complaint (ECF No. 8).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Grammar, spelling, and punctuation errors in quotes from Segreaves's submissions are cleaned up where necessary.

asserts that he was in the dayroom and "specifically stated to Mr. Haines that inmate Demetrius White was planning to assault [Segreaves] by breaking out of his handcuffs." (*Id.* at 5, 13 (internal quotation marks omitted).)  He claims that he "was constantly harassed by inmate White as being a 'snitch'" for reporting on drugs being brought into the cell block.  (*Id.* at 15.) Segreaves asked Haines to move him or to move White "to prevent such assault," and that Haines did move White to another part of the dayroom in response.  (*Id.* at 13.)  He asserts that Haines and Tomes violated "DOC protocol" by not shackling White at his legs.  (*Id.*)  He then claims that "officers Haines and Tomes abandoned their post between 2 p.m. and 2:15 p.m. prior to the assault" that occurred sometime between 2:10 and 2:20 p.m., and that Haines and Tomes were instead "hanging out in the bubble/control room" during the assault by White.  (*Id.*)  The assault lasted for about three minutes and consisted of White kicking Segreaves in the face, head, and back, "before inmate White ran into his cell and slammed the door."  (*Id.*)

Segreaves states that he is "not asserting a failure to intervene claim, as many officers rushed out of the control room to assist and protect" him.  (*Id.*)  Instead, he claims that Haines's "abandonment of his post constitutes either deliberate indifference or negligence," and that White could not have assaulted him but for the failure of Haines and Tomes to shackle White's legs.  (*Id.*)  He further alleges that "Chaplain Ms. Santana" told him during a visit one year later, in September 2023, that the assault on him "was a set-up."  (*Id.*)

Regarding the incident on September 10, 2022, Segreaves states that he and fellow inmate Indio Perez were placed in adjacent cages during recreation.  (*Id.* at 15.)  He alleges that Perez "is a pal of inmate White" and was angry at Segreaves because White had been disciplined for the assault on September 7.  (*Id.*)  After Segreaves had been in the recreation cage for "approximately thirty (30) minutes," Perez "poured a bottle of alleged hepatitis-C infected bodily

fluids (semen, blood and feces)" onto him.  (*Id.* at 15-16.)  He asserts that Defendant Laureano was the officer assigned to strip search the inmates "to ensure that no contraband is being taken out to [the] yard," that Laureano "overlooked" the bottle of fluids, and that Laureano intentionally placed Segreaves in the cage next to Perez "to assist inmate Indio Perez with his agenda" to pour the fluids onto Segreaves.  (*Id.* at 15.)  He alleges that it "was rumored that officer Mr. Laureano provides drugs to inmates" on his cell block, and that "White and Perez are known drug users."  (*Id.*)

Segreaves further asserts that both of the alleged assaults were captured on video surveillance, but his requests for access to the video were denied by Security Department Officer Hunter.  (*Id.* at 12.)  Segreaves claims to have suffered a "laceration to [his] ear, lacerations to [his] wrists due to handcuffs, bruises to the face, bruises to the back of [his] head, [and] bruises on [his] back," as well as unspecified "psychological trauma," which he supports by reference to numerous grievances attached to his Amended Complaint as exhibits.  (Am. Compl. at 5, 14, 17-29.)  For relief, he seeks $250,000 in damages.  (*Id.* at 5, 14.)

## II.    STANDARD OF REVIEW

The Court granted Segreaves's motion for leave to proceed *in forma pauperis* in a prior Order.  (*See* ECF No. 7.)  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim to relief, an inquiry governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Segreaves's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021)

3

(cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Segreaves is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

## III.    DISCUSSION

Segreaves brings claims against the Defendants pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  (*See* Compl. at 3.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Failure to Protect

Because Segreaves expressly states that he is not pursuing any claims for failure to intervene (*see* Am. Compl. at 13), the Court construes his individual-capacity claims against Haines, Tomes, and Laureano to allege that these Defendants failed to protect him from the assaults by White and Perez.  Prison officials have a duty to take reasonable measures to guarantee the safety of inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  In that regard, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.

1997) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See id.*; *Hamilton*, 117 F.3d at 746. Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). A plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

Segreaves's allegations as to the two assaults fail to state a claim for failure to protect. As to the September 7 incident in the dayroom, Segreaves asserts that Haines handcuffed and moved White after Segreaves told Haines about the threat and asked that he or White be moved to avoid the assault. He states that Haines and Tomes "abandoned their post" and instead were in the "bubble/control room," but he does not specify what that other post was or how their presence there would have prevented the assault. (Am. Compl. at 13.) Moreover, Segreaves's own pleading demonstrates the inadequacy of his factual allegations by noting that the failure to shackle White's legs and the absence from a particular post may have been negligence rather than deliberate indifference. (*See id.*) "It is well established that merely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent." *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998)). Even assuming that Haines and Tomes left some unspecified

post momentarily, failed to "finger-gauge" or tighten White's cuffs, or failed to employ leg shackles contrary to prison policy, Segreaves's allegations do not support a reasonable inference that Hanes and Tomes were deliberately indifferent to any risk to Segreaves. The deliberate indifference standard requires "that the defendant acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." *Chavarriaga v. New Jersey Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015); *see also Lebron v. Eason*, No. 24-1284, 2024 WL 2847188, at *3 (E.D. Pa. June 5, 2024) ("The fact that John Doe-1 may have violated a prison policy by opening the door to Mr. Lebron's cell does not support an inference of deliberate indifference."). According to Segreaves's own allegations, Haines took exactly the action Segreaves requested when informed of the risk: moving White to another part of the dayroom. Segreaves's conclusory allegation that "Haines should have assumed that it would be entirely feasible for an inmate to escape out of a set of handcuffs" (Am. Compl. at 13) is too speculative to permit the Court to draw a reasonable inference of deliberate indifference in his favor.

As to the September 10 incident, Segreaves alleges only that Defendant Laureano placed him in a recreation-yard cage next to Perez and "overlooked" the bottle of bodily fluids that Perez smuggled into his own cage. Segreaves states that Laureano "was rumored" to provide inmates on his cell block with drugs, and that Perez and White are drug users on that cell block. But he does not provide any facts to suggest that Laureano had actual knowledge that Perez posed a threat to him. The conclusory allegations that Laureano's failure to discover the bottle of fluids constituted deliberate indifference and that Laureano "assisted" Perez in the assault based on the limited facts in the Amended Complaint do not state a plausible claim to relief. *See Boskie v. Thomas*, No. 19-01369, 2019 WL 4168848, at *2 (M.D. Pa. Sept. 3, 2019) (inmate

failed to state failure to protect claim absent allegations that correctional officials "were aware that [another inmate] would put blood or feces in [plaintiff's] food and drink").

B.    **Claims related to grievances and evidence**

Much of Segreaves's Amended Complaint consists of assertions about the evidence that he believes will assist in proving his claims, largely concerning video surveillance or testimonial evidence.  In particular, his allegations against Defendant Hunter are premised entirely on Hunter's response to the grievances Segreaves filed that sought to have the video surveillance footage of the alleged assaults disclosed to him.  (*See* Am. Compl. at 12 (asserting that Hunter's denial of his request for video surveillance was "obstruction of justice").)  To the extent that Segreaves's discussion of Hunter's responses to his grievances were intended to form the basis of an independent claim for relief, that claim fails and will be dismissed.[2]  Section 1983 claims based generally on a defendant's handling of grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance

---

[2]  To the extent that Segreaves's discussion of video surveillance footage, documentary evidence, witness subpoenas, or other evidentiary matters are intended as requests for discovery from the Defendants, any such requests are premature at the screening stage.  Discovery generally does not occur until the Defendants have been served and have filed an answer to the operative pleading.  No discovery will take place in this case until the Court enters a scheduling order or other order permitting discovery.  This means the Court will not consider discovery motions unless or until discovery is authorized.  Should Segreaves choose to file a second amended complaint as outlined in this Memorandum, he should be mindful that, when screening a complaint under Section 1915 or considering a motion to dismiss under Federal Rule of Civil Procedure 12(b), the Court accepts the well-pleaded, non-conclusory factual allegations of a Plaintiff's complaint as true and draws reasonable inferences from those facts in the Plaintiff's favor.  *See Iqbal*, 556 U.S. at 678; *Shorter*, 12 F.4th at 374.

process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).  Since Segreaves's claims against Defendant Hunter all concern allegations that he improperly responded to grievances or interfered with Segreaves's use of the grievance process, the Court will dismiss those claims.

### C.    Piecemeal Pleading

Following his Amended Complaint, Segreaves submitted two other documents: a Letter dated October 23, 2024 (ECF No. 9), in which he states that he wishes to revise his prayer for damages to $50,000; and a Request dated November 13, 2024 (ECF No. 11), in which he seeks to add Superintendent Joseph Terra as a Defendant and lodge supervisory liability claims against him.  The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant.  *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").  Accordingly, any claims that Segreaves seeks to add by way of his piecemeal pleadings will be dismissed without prejudice to reasserting them in a second amended complaint as outlined in this Memorandum.[3]

---

[3]  Moreover, Segreaves's bare assertions that Terra is not enforcing various policies (*see* ECF No. 11 at 1) are insufficient to state a claim for supervisory liability.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by

Furthermore, as stated in the Court's prior Memorandum, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8, which requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  (*See* ECF No. 6 at 3 (first citing *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019), then quoting Fed. R. Civ. P. 8(a)).)  "This standard operates in tandem with that of Rule 10," which requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs.  *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10).  The purpose of these rules is to make clear to the Court and the defendants the factual basis for a plaintiff's claims so that the defendants can meaningfully respond to those claims.  *See id.* ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.")

---

subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.  The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227.  A supervisory claim also requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*).

(quotations omitted); *Young v. Centerville Clinic, Inc.*, No. 09-325, 2009 WL 4722820, at *3 (W.D. Pa. Dec. 2, 2009) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief."); *see also See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) ("Each averment [in the complaint] must be 'simple, concise, and direct.'" (quoting Fed. R. Civ. P. 8(d)(1))).  Segreaves should be mindful that, if he seeks to amend his complaint as outline in this Memorandum, he must submit a complete document that does not rely on any previous version of his complaint or other documents filed in this case to state a claim.  In other words, Segreaves must file one comprehensive complaint containing a coherent articulation of facts set forth in numbered paragraphs explaining what the named Defendants did or not do that allegedly caused him injury, and an organized list of claims he intends to bring based on those events.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Segreaves's Amended Complaint without prejudice and grant him leave to file a second amended complaint in the event that he can state a plausible claim to relief. [4]  An appropriate Order, which provides further instruction about amendment, will be entered separately.

**BY THE COURT:**

   **/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**

---

[4] Segreaves's Motion for the Appointment of Counsel (ECF No. 10) will be denied without prejudice to renewal after the Court conducts a statutory screening of any second amended complaint he may file.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).