IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSS J. SEGREAVES,<br>    Plaintiff,<br><br>v.<br><br>OFFICER MR. HAINES, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:   CIVIL ACTION NO. 24-CV-4356<br>:<br>:<br>: |

**MEMORANDUM**

**YOUNGE, J.**                                                                                       **APRIL 15, 2025**

Plaintiff Ross J. Segreaves initiated this civil action by filing a *pro se* Complaint against employees at SCI Phoenix, where he is incarcerated. The Court previously granted Segreaves leave to proceed *in forma pauperis* and dismissed both his original Complaint and First Amended Complaint ("FAC") with leave to amend. (*See generally* ECF Nos. 6, 7, 13, 14.) Currently before the Court is Segreaves's Second Amended Complaint ("SAC"), which names as Defendants: Corrections Officers Haines, Laureano, and Tomes, and Unit Manager Fanrak. (ECF No. 15.) For the following reasons, the Court will dismiss the SAC upon screening pursuant to 28 U.S.C. § 1915, without further leave to amend.

**I.     FACTUAL ALLEGATIONS**[1]

Segreaves alleges that he was assaulted by other inmates at SCI Phoenix on September 7, 2022, and September 10, 2022, and that the Defendants failed to protect him from those assaults. (SAC at 1.) At the time of the alleged assaults, Segreaves was housed in SCI Phoenix's

---

[1] The facts set forth in this Memorandum are taken from the SAC. (ECF No. 15). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors in quotes from Segreaves's submissions are cleaned up where necessary.

1

Diversionary Treatment Unit ("DTU").[2] (*Id.* at 2.) As to the September 7 incident, Segreaves alleges that he and other DTU inmates were in the dayroom during a "History Enrichment" class when he told Defendant Haines that another inmate, Demetrius White, "was/is planning to assault [him] by breaking out of the handcuffs at shift change." (*Id.* at 2.) Segreaves asked Haines to move White and Haines obliged, securing White to another table with handcuffs. (*Id.* at 4.) Segreaves asserts that Haines failed to observe "DOC protocol" by not fastening White to the table with leg shackles in addition to handcuffs, and that "Haines did not properly finger-gauge check the handcuffs . . . to ensure that inmate White would not be able to physically break out of the handcuffs to assault [him]." (*Id.*) He then claims that Defendants Haines and Tomes "abandoned their dayroom post prematurely" between 2 p.m. and 2:15 p.m., just before the assault occurred sometime between 2:10 and 2:20 p.m. (*Id.* at 3-4.) He asserts that, rather than remaining in the dayroom until the end of the shift, Haines and Tomes were instead "hanging out in the control room/Bubble," leaving only a "History Enrichment" instructor (who is not a corrections officer) in the dayroom when White allegedly assaulted him. (*Id.*) The assault lasted for about three minutes and consisted of White kicking and punching Segreaves in the face, head, and back, resulting in various injuries. (*Id.* at 3.)

Regarding the incident on September 10, 2022, Segreaves states that he and fellow inmate Indio Perez were placed in adjacent cages during recreation. (*Id.* at 2-3.) He alleges that Perez and White are friends and Perez was angry at Segreaves because White had been disciplined for the assault on September 7. (*Id.* at 3.) He claims that Perez assaulted him with a bottle of "Hepatitis-C infected body fluids" from his adjacent cage. (*Id.*) He asserts that

---

[2] "[The] DTU provides mental health care and secure housing for inmates suffering from a mental illness." *Hayes v. Gilmore*, 802 F. App'x 84, 86 n.1 (3d Cir. 2020) (*per curiam*); *see also* SAC at 5.

2

Defendant Laureano was charged with overseeing the recreation area and failed to strip-search Perez and to "remain outside in the recreation yard to monitor the inmates," both of which violated DOC policies and allowed Perez to assault him. (*Id.*) He further claims that Defendant Fanrak was the Unit Manager of the DTU, and that she failed to protect him from the assaults based on her purported failure to supervise the other Defendants. (*Id.* at 2, 5.)

Segreaves asserts that he "suffered extreme humiliation" as a result of the alleged assaults. (*Id.* at 5.) He further claims that the September 7 assault resulted in numerous physical injuries and caused him to suffer panic attacks and other psychological and mental injuries. (*Id.* at 3, 5.) He seeks $250,000 in damages. (*Id.* at 2.)

## II.     STANDARD OF REVIEW

The Court granted Segreaves's motion for leave to proceed *in forma pauperis* in a prior Order. (*See* ECF No. 7.) Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim to relief, an inquiry governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Segreaves's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Segreaves is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal

3

principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

### III.  DISCUSSION

Segreaves brings claims against the Defendants pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).

#### A.  Failure to Protect

Segreaves alleges that the Defendants failed to protect him from the assaults by White and Perez.[3]  Prison officials have a duty to take reasonable measures to guarantee the safety of inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  In that regard, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's

---

[3] In a prior pleading, Segreaves expressly stated that he is not pursuing any claims for failure to intervene, because "many officers rushed out of the control room to assist and protect" him once the assault began.  (FAC, ECF No. 8 at 13.)

safety." *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See id.*; *Hamilton*, 117 F.3d at 746. Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). A plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

The Court dismissed Segreaves's FAC because his allegations as to the two assaults failed to state a claim that Defendants Haines, Tomes, and Laureano were deliberately indifferent to an excessive risk to his safety on either occasion. (ECF No. 13 at 5-7.) The facts as pleaded in the SAC do not cure the defects that the Court previously identified. Primarily, even taking Segreaves's factual allegations as true, the decision of Haines to handcuff White to a table without shackling his legs, the momentary absence of Haines and Tomes from a particular post in the dayroom as opposed to the "control room/Bubble," and the failure of Laureano to strip-search Perez amount to no more than negligence rather than deliberate indifference, as Segreaves himself appears to recognize. (*See* ECF No. 13 at 5-6; *see also* SAC at 4.) As the Court previously explained to Segreaves, "[i]t is well established that merely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent." *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (citing *Cnty of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998)); *see also Lebron v. Eason*, No. 24-1284, 2024 WL 2847188, at

5

*3 (E.D. Pa. June 5, 2024) ("The fact that John Doe-1 may have violated a prison policy by opening the door to Mr. Lebron's cell does not support an inference of deliberate indifference.").

Segreaves again alleges that on September 7, he asked Haines to move White to another part of the dayroom because White was planning to attack him by slipping out of his handcuffs during a shift change, and that Haines honored this request by moving White and handcuffing him to another table.  (SAC at 4.)  Despite Haines's intervention, White was nonetheless able to escape his handcuffs and assault Segreaves.  (*Id.*)  Segreaves alleges that Haines and Tomes failed to protect him because their response was inadequate, *i.e.*, they did not use leg shackles on White (as allegedly required by policy) and left the dayroom while the inmates (including Segreaves and the now relocated White) were present with only the history instructor.[4]  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511 U.S. at 844.  Regardless of whether Segreaves's assault could have been prevented by the use of leg shackles, Haines responded reasonably to any risk (excessive or otherwise) by moving White and locking him to another table with handcuffs.  *See Cox v. Nobles*, 15 F.4th 1350, 1360-61 (11th Cir. 2021) (concluding that where "there [were] no allegations to suggest that in relocating Cox to another cell in the same dorm Harris knew that Cox and Frasier would encounter each other in an unsupervised setting," or any other allegations providing "insight into the reasonableness of Harris's actions," Cox failed "adequately allege[] that Harris acted in an objectively unreasonable manner," particularly since "separating prisoners

---

[4]  Although Segreaves alleges that he told Haines about the threat against him, it is not clear that Tomes was aware of this threat prior to the assault.  In other words, even if the facts in the SAC could support an inference that Haines was aware of a risk to Segreaves, it is not apparent that Tomes was also so aware.

6

is among the reasonable responses a prison official can take in appropriate circumstances."); *see generally Ferguson v. Nogan*, No. 16-3304, 2020 WL 5793708, at *5 (D.N.J. Sept. 29, 2020) ("[P]rison officials may escape liability if they 'believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent,' or 'if they responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer*, 511 U.S. at 844)).  In other words, As the Court stated in dismissing the FAC, a conclusory allegation that Haines should have assumed that White could break out of his handcuffs "is too speculative to permit the Court to draw a reasonable inference of deliberate indifference in [Segreaves's] favor."  (ECF No. 13 at 6.)  The SAC simply does not allege sufficient facts from which one could infer that Haines's response was so inadequate under the circumstances, that it rises to the level of deliberate indifference.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

As to the September 10 incident, Segreaves still does not provide any facts to suggest that Laureano had actual knowledge that Perez posed a threat to him.  *See* id. at 6-7 (citing *Boskie v. Thomas*, No. 19-01369, 2019 WL 4168848, at *2 (M.D. Pa. Sept. 3, 2019) (inmate failed to state failure-to-protect claim absent allegations that correctional officials "were aware that [another inmate] would put blood or feces in [plaintiff's] food and drink").)  *But cf. Diehl v. Leach*, No. 16-1591, 2018 WL 948771, at *4 (W.D. Pa. Feb. 15, 2018) (holding that plaintiff stated a claim to relief on a failure-to-protect claim involving assault with bodily fluids where corrections officers had "actual knowledge" of impending attack "and did nothing").

Because the SAC failed to cure the defects the Court previously identified in Segreaves's pleadings, his failure-to-protect claims will be dismissed.[5]

### B.     Supervisory Liability

As to Defendant Fanrak, Segreaves alleges that she failed to protect him from an excessive risk of serious harm because she did not properly supervise the other Defendants. (SAC at 2.)  He asserts that on September 7, White was "able to run after [him] and assault [him] after he broke out of the handcuffs" because Fanrak "apparently approves [of] . . . not shackling inmates at the legs to the leg shackle fixtures on the tables [in the dayroom], or she would have ordered otherwise." (*Id.* at 2, 5.)  He further claims that "Fanrak's job is to oversee that the officers ([including] Laureano) are properly strip searching the inmates ([including] Perez) for contraband ([including] bodily fluids) which she did not do" on September 10.  (*Id.* at 2.)

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005); *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*).  Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis, meaning a supervisor is not liable solely because a subordinate committed a constitutional violation.  *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).  There are "two general ways in which a supervisor-defendant may be

---

[5] Because Segreaves's claims sound in negligence as a matter of law for the reasons discussed in this Memorandum, the Court has also considered whether Segreaves intended to bring claims under state tort law.  However, as there is no indication that complete diversity of citizenship exists between the parties, the Court lacks subject matter jurisdiction over any such claims.  *See* 28 U.S.C. § 1332.  Accordingly, any state law claims that Segreaves intended to lodge will be dismissed without prejudice for lack of jurisdiction.  Recognizing that Segreaves may choose to pursue those claims in state court, this Court expresses no opinion on the availability of such cause of action or on the merits of such claims.

liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

As discussed above, Segreaves has not stated a claim for failure to protect against any of the other Defendants, so Segreaves's supervisory claim fails because a court must determine "that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). Regardless, Segreaves failed to allege a supervisory claim against Fanrak. Segreaves's conclusory statements that Fanrak "oversee[s]" Laureano and other officers assigned to monitor the recreation area, and that she "apparently approves" of a practice of not employing leg shackles "or she would have ordered otherwise" are insufficient to allege personal involvement. *See Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016) ("To presume that [unconstitutional] practices arose from [an official's] policies merely because of his position . . . is to rely on *respondeat superior*."); *Evancho*, 423 F.3d at 354. And, although Segreaves pleads that he discussed the September 7 assault with Fanrak after the fact (SAC at 5),

"awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement." *See Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (citing *Rode*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)). Accordingly, the claims against Fanrak will also be dismissed for this alternative reason.

### IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the SAC. Because the Court has already provided Segreaves with two opportunities to amend and he has failed to cure the defects in his pleadings, any further attempt at amendment would be futile, so the SAC will be dismissed with prejudice. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F. 3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). An appropriate Order will be entered separately.

BY THE COURT:

  /s/ John Milton Younge  
JOHN MILTON YOUNGE, J.